UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ATLANTIC INTERNATIONAL MOVERS, LLC

              Plaintiff,

      -against-

OCEAN WORLD LINES, INC., et al.,

              Defendants.
----------------------------------------------------------X

**MEMORANDUM AND ORDER**
12-CV-2464 (SJF)(GRB)

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★ DEC 1 1 2012 ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

On May 15, 2012, plaintiff Atlantic International Movers, LLC ("plaintiff") commenced this action against Ocean World Lines, Inc. ("OWL"), RF International, Ltd. ("RF," and together with OWL, "defendants"), and other corporate and individual defendants (the "dismissed defendants"),[1] asserting various claims arising out of OWL's business dealings with Comtrans International, LLC ("Comtrans"), plaintiff's alleged predecessor in interest. [Docket Entry No. 1] ("Compl."). Plaintiff asserts claims for: (1) violation of the Racketeering Influenced and Corrupt Organizations Act (the "RICO statute"), 18 U.S.C. §§ 1961, et. seq.; (2) tortious interference with business relationships and contractual relations; (3) fraud; (4) negligent misrepresentation; (5) civil conspiracy; (6) breach of contract; (7) breach of the implied covenant of good faith and fair dealing; (8) promissory estoppel; (9) unjust enrichment; and (10) declaratory judgment. Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(c). For the reasons that follow, the motion is GRANTED IN PART

---

[1] Ocean World Lines Europe GmbH, Ocean World Lines Bremen GmbH & Co. KG, Cord Brugge, Alan Baer, Joseph Kolm, and Andrea Martens were voluntarily dismissed from the case on September 21, 2012. [Docket Entry No. 20]. With the exception of certain instances specified herein, plaintiff's complaint largely fails to distinguish between the conduct of the individual defendants and dismissed defendants. Therefore, except where relevant, all defendants and dismissed defendants will be referred to collectively as "OWL."

1

and DENIED IN PART.

I. Background[2]

Between 2006 and 2008, Comtrans entered into various bills of lading with OWL whereby Comtrans would tender Comtrans' customers' cargo to OWL for transport by sea on behalf of Comtrans. Compl. at ¶ 4. Following negotiations between OWL and Comtrans in 2006, Comtrans agreed to continue to use OWL's services and, in exchange, OWL agreed to allow Comtrans to extinguish its past debts to OWL "by means of paying $1,000 or more with each new conclusion of a bill of lading." Id. at ¶ 29. In late 2007, OWL "arbitrarily, and without legal justification, ordered that Comtrans bring all of its accounts and extensions of credit with ... [OWL] fully up to date." Id. at ¶ 32. In order to induce Comtrans to pay its outstanding debt, OWL "held for ransom thirty-six [36] containers that it was then transporting for Comtrans' customers" by refusing to deliver or release the cargo and threatening to sell the cargo illegally. Id. at ¶¶ 33-35. While holding the cargo, OWL also increased demurrage charges to "exorbitant and extortionate" levels, resulting in plaintiff's payment of at least $144,000 in excessive demurrage costs. Id. at ¶¶ 36-38.

"In 2008 and thereafter," OWL contacted Comtrans' customers directly to demand payment for release of the customers' cargo, resulting in the destruction of business relationships between Comtrans and the customers. Id. at ¶¶ 39-42.[3] OWL initiated a lawsuit against Comtrans in the United States District Court for the Eastern District of Virginia alleging non-payment by Comtrans under bills of lading entered into between August 2006 and September 2007. Id. at ¶¶ 44-45.[4] OWL "harmed Comtrans and its reputation by fraudulently moving for

---

[2] For purposes of the pending motion, the truth of the well-pleaded factual allegations in the complaint is assumed. Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2011).
[3] OWL also initiated lawsuits in Germany against a Comtrans customers demanding payment. Compl. at ¶ 42.
[4] The lawsuit was initiated on February 26, 2008. See Ocean World Lines, Inc. v. Comtrans Int'l, LLC, No. 08-CV-

2

default judgment in the amount of $147,889.75" upon the basis of invoices that were "claimed to be outstanding despite prior receipt of payment from Comtrans' customers" and that included "exorbitant, fraudulent demurrage charges at points in time they could not have been incurred." Id. at ¶¶ 47-49. As a result of the foregoing conduct by OWL, Comtrans "suffered irreparable damage to its reputation" and "was forced out of business and assigned all of its present and future claims against" OWL to plaintiff on or about June 1, 2011. Id. at ¶ 2.

II. Motion for Judgment on the Pleadings Standard

In deciding a motion pursuant to Rule 12(c), the Court employs the same standard as in deciding a Rule 12(b)(6) motion to dismiss. Johnson v. Rowley, 569 F.3d 40, 43 (2d Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011); see also Ruston v. Town Bd. for the Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). However, "the tenet that a court must accept as true all of the allegations contained in a

---

178 (E.D. Va. 2008).

complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (quoting Roberts v. Babkiewicz, 582 F.3d 418, 419 (2d Cir. 2009)). "'A complaint is [also] deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint.'" Id. (quoting Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004)).

Plaintiff asserts that defendants' motion improperly relies upon the affidavit of Ulrich Albrecht [Docket Entry No. 17] ("Albrecht Affidavit") submitted by plaintiff in support of its prior motion for default judgment. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d). "[A] district court acts properly in converting a motion for judgment on the pleadings into a motion for summary judgment when the motion presents matters outside the pleadings, but the rule requires that the court give 'sufficient notice to an opposing party and an opportunity for that party to respond.'" Hernandez v. Coffey, 582 F.3d 303, 307 (2d Cir.2009) (quoting Groden v. Random House, Inc., 61 F.3d 1045, 1052 (2d Cir.1995)). As discussed in further detail below, the Albrecht Affidavit, with the exception of the Assignment Agreement attached thereto, is not necessary to the disposition of the pending motion and therefore it is not necessary to consider whether defendants' reliance upon it is

proper.

III. Analysis

A. Champerty

New York's anti-champerty statute provides that "no corporation or association . . . shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon . . . ." N.Y. JUDICIARY LAW § 489(1). An assignment made in violation of the statute is void. See, e.g., Semi-Tech Litig., LLC v. Bankers Trust Co., 272 F. Supp.2d 319, 331 (S.D.N.Y. 2003).

The statute is interpreted narrowly, and New York courts generally hesitate to find that an action is champertous as a matter of law. Bluebird Partners, L.P. v. First Fidelity Bank, N.A., 94 N.Y.2d 726, 734-35 (2000); see also Empresa Cubana Exportadora De Azucar y Sus Derivados v. Lamborn & Co., Inc., 652 F.2d 231, 236 (2d Cir. 1981) ("New York courts have been careful to limit the application of [section 489] to situations where the danger at which it was aimed could conceivably arise."). The purpose of the statute is to prohibit "the purchase of claims with the intent and for the purpose of bringing an action that the purchaser may involve parties in costs and annoyance, where such claims would not be prosecuted if not stirred up in an effort to secure costs." Trust for the Certificate Holders of Merrill Lynch Mortg. Investors, Inc. v. Love Funding Corp., 13 N.Y.3d 190, 201 (2009) (internal quotation marks and alterations omitted). The New York Court of Appeals has made clear that "the champerty statute does not apply when the purpose of an assignment is the collection of a legitimate claim." Id. The inquiry into the purpose of an assignment is factual, id. at 200, and "[i]n light of the history and purpose of the

5

anti-champerty statute, courts have often looked to the relationship between the assignor and assignee when considering whether an assignment falls within the statute's purview," In re Imax Sec. Litig., No. 06-CV-6128, 2011 WL 1487090, at *5 (S.D.N.Y. Apr. 15, 2011). Defendants argue that plaintiff's complaint must be dismissed because the assignment of Comtrans' claims against OWL to plaintiff is champertous under New York law.[5]

Defendants' argument fails in light of the relationship between plaintiff and Comtrans. Plaintiff is a company formed and owned by Ulrich Albrecht, the "Managing Member" of Comtrans. See [Docket Entry No. 17-A]. The Assignment Agreement states that plaintiff "was formed due to Comtrans' imputed reputation due to OWL's actions," and because "Comtrans [did] not have the resources to pursue the collection of the Claims due to OWL's actions." Id. An assignment between closely affiliated entities does not implicate the concerns of New York's anti-champerty statute. See, e.g., Empresa Cubana, 652 F.2d at 236 (holding that where the assignment of a debt instrument was made between two closely affiliated business enterprises, both of which had been parties to the transaction upon which the suit was brought, New York's anti-champerty statute was not implicated); Imax, 2011 WL 1487090, at *6 (holding that assignment of claims by fund to fund's investment advisor did not implicate anti-champerty law); see also Sygma Photo News, Inc. v. Global Int'l Inc., 616 F. Supp. 1153, 1157 (S.D.N.Y. 1985) (defining champerty as a "'bargain between a stranger and a party to a lawsuit by which the stranger pursues the party's claim in consideration of receiving part of any judgment proceeds'") (quoting Alexander v. Unification Church of Am., 634 F.2d 673, 677 n.5 (2d Cir. 1980)). Defendants' attempt to distinguish the Assignment Agreement on the basis that it does not involve the assignment of a debt instrument is without merit. See Defendants' Reply

---

[5] The Court deems plaintiff's complaint to include the Assignment Agreement. [Docket Entry No. 17-A]. The agreement is integral to plaintiff's claims, see L-7 Designs, 647 F.3d at 422, and, having been submitted to the Court by plaintiff, the authenticity of the agreement cannot be disputed.

6

Memorandum of Law [Docket Entry No. 34-4] at 4. Whether the underlying claim is based upon a debt instrument or some other transaction, the essential issue remains whether the purpose of the assignment is to obtain costs or to enforce a legitimate claim, which may be demonstrated by the relationship between the parties. See Love Funding, 13 N.Y.3d at 201.

Given the purpose of the anti-champerty statute and the circumstances of the Assignment Agreement, there is no basis to dismiss plaintiff's complaint on champerty grounds.

B.   RICO Claims[6]

1.   Section 1962(c)

The RICO statute provides a private right of action for treble damages for a "person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Plaintiff alleges that defendants violated both section 1962(a) and section 1962(c) of the RICO statute. Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "A plaintiff charging civil RICO violations must allege each of the claim's elements, including '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" Terrell v. Eisner, 104 F. App'x 210, 212 (2d Cir. 2004) (quoting Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999)).

"Under this section, the RICO 'person' must conduct the affairs of the RICO 'enterprise' through a pattern of racketeering activity." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir. 1994). Therefore, a "corporate entity may not be

---

[6] Given the disposition of plaintiff's RICO claims, it is not necessary to decide whether these claims are barred by the applicable statute of limitations, as argued by defendants.

simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999) (internal quotation marks omitted). A plaintiff may not circumvent the distinctiveness requirement by alleging an enterprise consisting of a corporate entity and its affiliates and agents. Riverwoods, 30 F.3d at 344. As explained by the Second Circuit:

> Because a corporation can only function through its employees and agents, any act of the corporation can be viewed as an act of such an enterprise, and the enterprise is in reality no more than the defendant itself. Thus, where employees of a corporation associate together to commit a pattern of predicate acts in the course of their employment and on behalf of the corporation, the employees in association with the corporation do not form an enterprise distinct from the corporation.

Id. (citation omitted).

Plaintiff argues that "[t]he RICO 'enterprise,' as plainly pleaded in the Complaint, is the group of four separate legal entities [(OWL, OWL Europe, OWL Bremen GmbH, and RF)] and four separate individuals [(Brugge, Baer, Kolm, and Martens)]." Plaintiff's Memorandum of Law in Opposition to the Motion for Judgment on the Pleadings of Ocean World Lines, Inc. and RF International, Ltd. [Docket Entry No. 34-3] ("Pl. Memo.") at 9. According to plaintiff, "when Defendants argue that Plaintiff alleges only a corporation and its employees, it ignores the fact that [the four (4) entities] comprise a set of separate companies, some of which are joint ventures." Id. at 10. Plaintiff also relies upon the allegation in its complaint that the entities and individuals "created a structure whereby Brugge acted as Chief Executive Officer of the European arm of the enterprise, managing transactions and operating different aspects of the commercial oceanic transportation business including shipping, storing and managing services to support those activities all of which was legally done on behalf of OWL." Compl. at ¶ 61.

Plaintiff fails to allege the existence of an enterprise that is distinct from the defendants

8

and their affiliates and employees. Plaintiff acknowledges in its complaint that each of the corporate RICO persons are "affiliated compan[ies] of OWL" and each of the alleged individual RICO persons are employees of OWL or OWL Europe. Compl. at ¶¶ 14-22. Moreover, plaintiff does not allege conduct by any party that was not in the course of their employment or on behalf of OWL. In other words, "[p]laintiff's pleadings depict a situation where a corporation, its employees and its subsidiaries were acting in concert in pursuit of a common objective." C.A. Westel de Venezuela v. Am. Tel. & Tel. Co., No. 09-CV-6665, 1994 WL 558026, at *8 (S.D.N.Y. Oct. 11, 1994). The distinctiveness requirement would be easily circumvented if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with its employees, agents, and affiliated entities acting on behalf of the corporation. See Riverwoods, 30 F.3d at 344; see also Moses v. Martin, 360 F. Supp.2d 533, 549 (S.D.N.Y. 2004) ("[W]hen the plaintiff names the corporation as both a defendant and the RICO enterprise, courts have generally refused to hold the corporation liable because doing so would eviscerate the distinctiveness requirement."); C.A. Westel, 1994 WL 558026, at *7 ("A close examination of plaintiff's enterprise allegations reveals that the purported enterprise is no more than an association of entities acting on behalf of defendant AT&T."). Accordingly, plaintiff's claim pursuant to section 1962(c) is dismissed.

2. Section 1962(a)

Section 1962(a) provides that:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). To allege an investment injury under section 1962(a), plaintiff must plead two (2) elements: (1) that defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise; and (2) that plaintiff suffered an injury as a result of that investment by defendants. West 79th Street Corp. v. Congregation Kahl Michas Chinuch, No. 03 Civ. 8606, 2004 WL 2187069, at *11 (S.D.N.Y. Sept. 29, 2004). Section 1962(a) "reflect[s] Congress's concern about the control of otherwise legitimate business concerns acquired by the sub rosa investment of profits acquired from illegal ventures." Ideal Steel Supply Corp. v. Anza, 652 F.3d 310, 320 (2d Cir. 2011) (internal quotation marks omitted). "Subsection (a) . . . focuses the inquiry on conduct different from the conduct constituting the pattern of racketeering activity. After there have been sufficient predicate acts to constitute such a pattern, what is forbidden by subsection (a) is the investment or use of the proceeds of that activity to establish or operate a commerce-affecting enterprise." Id. at 321. Therefore, plaintiff "must show injury caused not by the pattern of racketeering activity itself, but rather by the use or investment of the proceeds of that activity." Id.[7]

Defendants assert that plaintiff fails to allege a claim under section 1962(a) "because it has failed to plead any injury arising from Defendants' alleged investment of proceeds from 'the enterprise.'" Memorandum of Law in Support of Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) [Docket Entry No. 34-2] ("Def. Memo.") at 12. According to defendants, the only relevant allegation in the complaint is that defendants "invested the proceeds of racketeering conduct into their various entities that form an enterprise affecting interstate commerce in violation of" section 1962(a), Compl. at ¶ 82, which is "'conclusory, does not identify an entity that the defendants invested income in that is separate

---

[7] "[T]here is no requirement under section 1962(a) (as opposed to section 1962(c)) that the 'person' be distinct from the 'enterprise.'" Riverwoods, 30 F.3d at 345.

10

from the 'racketeering enterprise, and is insufficient to state a claim under Section 1962(a).'" Def. Memo. at 12 (quoting Defazio v. Wallis, 500 F. Supp.2d 197, 208 (E.D.N.Y. 2007)). Plaintiff argues in response that the complaint is "replete" with allegations that "through illegal means . . . funds were extorted from Comtrans and from Comtrans's [sic] clients, and such funds were invested back into the companies which received them, causing damages to Comtrans because funds were used to bring a lawsuit against Comtrans (in Virginia), and lawsuits against Comtrans clients (in Germany), and to collect extension of credit by extortionate means, and such injury which was caused and suffered well into 2010." Pl. Memo. at 9.

Plaintiff has failed to allege an injury incurred as a result of the investment of proceeds of racketeering activity. The injuries that plaintiff allegedly suffered from OWL's reinvestment of the racketeering proceeds, i.e., the filing of the lawsuits in Virginia and Germany and the other alleged extortion, are the same as the predicate racketeering acts themselves. See Compl. at ¶¶ 64-72; Ideal Steel, 652 F.3d at 321. In other words, plaintiff has merely alleged that racketeering proceeds were reinvested in OWL, allowing OWL to continue to operate and conduct the racketeering activity. "'[T]he injury causation requirement of § 1962(a) is not satisfied by allegations that a defendant, which is also the enterprise, invested the racketeering income in its general operations,'" West 79th Street, 2004 WL 2187069, at *11 (quoting Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 657 (S.D.N.Y. 1996)), thereby "keep[ing] the defendant alive so that it [could] continue to injure [the] plaintiff," Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1188 (3d Cir. 1993). See also, e.g., Woods v. Mercier, No. 11-CV-6502, 2012 WL 3925852, at *5 (W.D.N.Y. Sept. 7, 2012) (holding that "alleg[ations] that income derived directly or indirectly from the purported racketeering activity by the [] defendants was reinvested into the same enterprise purportedly responsible for that racketeering

11

activity ... are insufficient as a matter of law to sustain a Section 1962(a) claim"). Therefore, plaintiff has failed to "show injury caused not by the pattern of racketeering activity itself, but rather by the use or investment of the proceeds of that activity." Ideal Steel, 652 F.3d at 321.

Plaintiff's reliance upon the Second Circuit decision in Ideal Steel, 652 F.3d 310 (2d Cir. 2011), is unavailing. In that case, the defendants argued that their use of racketeering proceeds to establish a new store (which decreased the plaintiff's sales) did not form the basis for a section 1962(a) claim because the racketeering proceeds were merely reinvested in the entity responsible for the racketeering. Id. at 320-22. The Second Circuit held that: (1) the situation was factually distinguishable because the proceeds were not merely invested in the same entity but rather were transferred to a new company that used the proceeds to establish the new store location; and (2) "even if Congress did not intend subsection (a)'s prohibition to reach the use of RICO tainted funds by the RICO violator in its ongoing operation, the legislative history does not permit the inference that Congress meant to allow such entities, with impunity, to use those funds to branch out to new locations." Id. at 322. The Second Circuit's holding did not question the general principle that reinvestment of racketeering proceeds in the entity conducting the racketeering is inadequate to state an injury under section 1962(a) and is also not applicable to the facts alleged here. Accordingly, plaintiff's claim pursuant to section 1962(a) is dismissed.

C. Fraud

"Under New York law, '[t]o state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury.'" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 291 (2d Cir. 2006) (quoting Kaufman v. Cohen, 760 N.Y.S.2d 157, 165 (App. Div. 2003)). To satisfy the requirement of Federal Rule of

Civil Procedure 9(b) ("Rule 9(b)") that fraud claims be "state[d] with particularity," plaintiff must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Anschutz Corp. v. Merrill Lynch & Co., Inc., 690 F.3d 98, 108 (2d Cir. 2012) (quoting Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)). The particularity requirement "serves to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." Rombach, 355 F.3d at 171 (internal quotation marks omitted). Plaintiff has failed to assert its fraud claim with sufficient particularity.

According to plaintiff, "[t]he gravamen of the fraud claim is that in connection with the deliveries contemplated by 33 bills of lading, as pleaded in the Complaint, OWL fraudulently misrepresented that it would use Comtrans' payments for purposes of extinguishing old liabilities and deliver the containers. Instead, the payments were extorted, the containers were taken as ransom and the payments were applied against invented demurrage charges. In short, Comtrans' Mr. Albrecht was promised that the containers would be delivered, but Defendants did not intend to deliver the containers, but rather take them as ransom." Pl. Memo. at 3; see also Compl. at ¶¶ 28-29.

Even if pleaded with particularity, this allegation is duplicative of plaintiff's breach of contract claim, which alleges that "Comtrans contracted with OWL for the delivery of goods for its customers[,] OWL breached the contracts with Comtrans, and refused to deliver the goods as required by the contracts, and refused to release the goods before extortionate payments had been made to it." Compl. at ¶¶ 113-14. "[U]nder New York law, parallel fraud and contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform

13

under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 183–84 (2d Cir.2007) (citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir.1996)); see also Stewart v. Jackson & Nash, 976 F.2d 86, 89 (2d Cir. 1992) ("New York law distinguishes between a prospective business partner's promissory statements as to what will be done in the future, which give rise only to a breach of contract claim, and his or her false representations of present fact, which give rise to a separable claim of fraudulent inducement.") (internal quotation marks and alterations omitted). Plaintiff's complaint does not contain any such basis for a parallel fraud claim.

Plaintiff's complaint makes general allegations that OWL made fraudulent misrepresentations directly to Comtrans and Comtrans' customers regarding demurrage charges. Compl. at ¶¶ 36, 91-92, 96-97. According to plaintiff "[d]efendants misrepresented material facts concerning demurrage charges, invoices, payment status, etc., to induce Comtrans and Comtrans' customers to make excessive payments . . ., and omitted material information regarding demurrage charges, credit, debts, etc [sic], in their communications with Comtrans and Comtrans' customers." Compl. at ¶¶ 91-92. These allegations do not meet the requirements of Rule 9(b), as plaintiff fails to specify the time, place, or content of any of the alleged misrepresentations. Plaintiff merely states that the demurrage charges were "increased to $100 per day, which totaled $3,600 per day or $25,000 per week for all of the 36 Comtrans containers that the OWL Defendants would not release." Compl. at ¶ 37. Although the demurrage charges may have been in breach of the parties' agreements, plaintiff does not explain how they constitute misrepresentations. To the extent that plaintiff does make specific allegations

14

regarding inaccurate information contained in invoices submitted by OWL to Comtrans' customers, see Compl. at ¶¶ 44, 47-48, 93, plaintiff has not alleged that Comtrans relied upon these alleged misrepresentations to its detriment.

The remainder of plaintiff's fraud allegations relate to a default judgment against Comtrans that OWL obtained in the District Court for the Eastern District of Virginia. Plaintiff alleges that OWL obtained a default judgment against Comtrans upon the basis of certain bills of lading and invoices which contained fraudulent information regarding demurrage charges and the status of payment. Pl. Memo. at 3-4; Compl. at ¶¶ 44, 47-49, 93. Plaintiff alleges that three (3) specific invoices contained incorrect information. Compl. at ¶¶ 44, 47-48, 93. However, the proper means for Comtrans to obtain relief from a default judgment obtained through fraud is to bring an action before the court that entered the judgment pursuant to Federal Rule of Civil Procedure 60(d), which provides that a court may "(1) entertain an independent action to relieve a party from a judgment . . . or (3) set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(1), (3); see also LinkCo, Inc. v. Akikusa, 615 F. Supp.2d 130, 134-35 (S.D.N.Y. 2009). Given Comtrans' failure to seek relief from the judgment, the Court will not now consider the default judgment as a basis for a separate fraud action. Accordingly, plaintiff's fraud claim is dismissed.

D. Tortious Interference

Under New York law, "'[t]ortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom.'" Valley Lane Indus. Co. v. Victoria's Secret, 455 F. App'x 102, 104 (2d Cir. 2012) (quoting Lama Holding

15

Co. v. Smith Barney, 646 N.Y.S.2d 76, 82 (1996)). Defendants argue that any such cause of action is barred by the applicable New York state statute of limitations.

"A statute of limitations provides an affirmative defense, and the burden is on the defendant to establish when a federal claim accrues." Gonzalez v. Hasty, 651 F.3d 318, 322 (2d Cir. 2011) (citing FED R. CIV. P. 8(c)); see also Abbas v. Dixon, 480 F.3d 636, 640 (2d Cir. 2007) ("The pleading requirements in the Federal Rules of Civil Procedure . . . do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses"). Therefore, "the Court may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear that the claim is untimely," FTA Mkt. Inc. v. Vevi, Inc., No. 11-CV-4789, 2012 WL 383945, at *3 (S.D.N.Y. Feb. 1, 2012) (citing Harris v. City of N.Y., 186 F.3d 243, 250 (2d Cir. 1999)), as "[t]he determination of when a statute of limitations began to run is generally a factual one," Bild v. Konig, No. 09-CV-5576, 2011 WL 666259, at *3 (E.D.N.Y. Feb. 14, 2011). See also Ortiz v. City of N.Y., No. 10-CV-3576, 2010 WL 5116129, at *1 (E.D.N.Y. Dec. 13, 2010) ("[A] motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations.").

"The statute of limitations for tortious interference claims is three years," Chevron Corp. v. Donziger, No. 11-CV-691, 2012 WL 1711521, at *18 (S.D.N.Y. May 14, 2012), and it "generally accrues when an injury is sustained, not discovered," Am. Fed. Grp., Ltd. v. Edelman, 722 N.Y.S.2d 870, 870 (App. Div. 2001). See also Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., No. 02-CV-6438, 2003 WL 21507529, at *3 (S.D.N.Y. June 30, 2003) ("Under New York law, a cause of action for tortious interference 'accrues at the time the injury is sustained, rather than the date of defendant's alleged wrongful act or the date of discovery of the

16

injury by the plaintiff.'") (quoting Rosemeier v. Schenker Int'l, Inc., 895 F. Supp. 65, 66 (S.D.N.Y. 1995)). "'[T]ortious interference with contract is not a continuing tort.'" Chevron, 2012 WL 1711521, at *18 (quoting Spinap Corp., Inc. v. Cafagno, 756 N.Y.S.2d 86, 87 (App. Div. 2003)).

Plaintiff's complaint fails to allege that Comtrans incurred any injury from OWL's alleged tortious interference after May 15, 2009.[8] Although plaintiff alleges that "[t]he illegal and tortious contacts and communications to Comtrans' customers continued into at least on or around 2010," Compl. at ¶ 43, this conclusory allegation appears to refer to the lawsuits that OWL initiated against certain Comtrans' customers in Germany, which were concluded in 2010. Compl. at ¶ 8. Any injury incurred by Comtrans from these lawsuits was clearly incurred prior to the lawsuits' conclusion (in a manner favorable to Comtrans and Comtrans' customers) in 2010. See Compl. at ¶ 42. Plaintiff fails to allege any further acts of tortious interference after (1) OWL's initial refusal to deliver the customers' cargo in 2007, id. at ¶¶ 32-33, and (2) its demand for payment from Comtrans and Comtrans' customers in 2008, id. at ¶¶ 39-42. See Iqbal, 556 U.S. at 678 ("[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting Twombly, 550 U.S. at 557). Accordingly, plaintiff's tortious interference claim is dismissed.

E. Conspiracy

To plead a claim for civil conspiracy, a party must allege an underlying tort, plus "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." Ebusinessware, Inc. v. Tech. Servs. Grp., No. 08 Civ. 9101, 2009 WL 5179535, at

---

[8] The Court's determination of the statute of limitations issue does not rely upon the contents of the Albrecht Affidavit.

17

*15 (S.D.N.Y. Dec. 29, 2009) (internal quotation marks omitted); see also Cofacredit v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 240 (2d Cir. 1999) ("To prove a conspiracy, a plaintiff must show a corrupt agreement, an overt act in furtherance of that agreement, and membership in the conspiracy by each defendant.").

Plaintiff fails to allege an agreement between two (2) or more persons to violate the law. Plaintiff makes the conclusory allegation that "OWL, OWL Europe, OWL Bremen GmbH, Brugge, Baer, Kolm, Martens and John Does 1-5 formed a common understanding and agreement to carry out unlawful acts against Comtrans and Comtrans' customers." Compl. at ¶ 109. However, the complaint must provide a "some factual basis supporting a meeting of the minds . . . to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Plaintiff's complaint largely fails to attribute specific actions to any of the parties and makes no specific allegations supporting the existence of an agreement between them. Without such a factual basis, plaintiff's conclusory allegation is insufficient to support a claim of conspiracy.

Moreover, the alleged agreement between the foregoing parties fails to form the basis for a claim of civil conspiracy due to the intracompany conspiracy doctrine. The intracompany conspiracy doctrine "posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Varricchio v. Cnty. of Nassau, 702 F. Supp.2d 40, 62 (E.D.N.Y. 2010). Plaintiff argues that "all the RICO 'persons' cannot be rightly treated as a single corporate entity." Pl. Memo. at 13. However, as noted with respect to plaintiff's failure to allege the existence of a RICO enterprise, plaintiff acknowledges in its complaint that all of the parties named in the complaint are either corporate affiliates or employees of one another, Compl. at ¶¶ 14-22, and does not allege that any of these parties acted outside the scope of their employment

18

or corporate affiliation. See Compl. at ¶ 35. Plaintiff's "bare allegation of conspiracy supported only by an allegation of conduct that is readily explained as individual action" is insufficient to allege a claim of civil conspiracy. Farbstein v. Hicksville Public Library, 254 F. App'x 50, 51 (2d Cir. 2007) (internal quotation marks omitted); see also Hilton Head Holdings b.v. v. Peck, No. 11 Civ. 7768, 2012 WL 613729, at *5 (S.D.N.Y. Feb. 23, 2012) (dismissing civil conspiracy claim because "the allegations in the instant complaint are merely formulaic and conclusory, again failing under the Iqbal standard"). Accordingly, plaintiff's civil conspiracy claim is dismissed.

III. Conclusion

For the foregoing reasons, counts I, II, III and V of the complaint are dismissed. Plaintiff is granted leave to file an amended complaint with respect to the fraud and tortious interference claims within thirty (30) days of the date of entry of this Order. No leave is granted with respect to the RICO and civil conspiracy claims, as it is apparent from the complaint that amendment would be futile. See Anatian, 193 F.3d at 89.

**SO ORDERED.**

s/ Sandra J. Feeurstein
───────────────────────────
SANDRA J. FEUERSTEIN
United States District Judge

Dated: December 11, 2012
       Central Islip, New York